A03A1988. IN THE INTEREST OF Q. D., a child.
A03A1989. IN THE INTEREST OF D. D., a child.
(587 SE2d 336)

ELDRIDGE, Judge.

Following a full hearing in the Juvenile Court of Spalding County, Q. D. and D. D., two brothers ages 11 and 13 respectively, appeal their adjudication of delinquency for committing acts which, had they been committed by an adult, would constitute the offense of criminal damage to property in the second degree. They argue that the evidence was insufficient to authorize their convictions. Finding no error, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that the Spalding County Sheriff's Office was contacted by Greg Pruitt, the owner of the house located at 121 Wilder Way, Griffin, regarding vandalism that had occurred to the house between October 15, 2002, and October 22, 2002, after his last tenant had vacated the premises. Red lamp oil was strewn throughout the house over the carpet and walls. Several windows were broken. And numerous large and small holes had been made in the walls of every room in the house.

Christopher Wright testified at trial that, after the last tenants moved out of the house on Wilder Way, he was at Jacques Brewster's house with Q. D., D. D., and Pharoh Loving. Both Q. D. and D. D. stated that they wanted to go into the Wilder Way house. Later that day, the boys left Brewster's house and went to Wright's house. Again, D. D. stated that he wanted to go into the Wilder Way house. After staying at Wright's house about 20 minutes, Q. D. and D. D.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

left. About two weeks later, as Wright walked through the backyard of the Wilder Way house, he saw through an uncovered window a hole in the wall of one of the bedrooms. Loving later told him that "they went inside the house." Loving did not state who they were.

Brewster testified that while Q. D., D. D., Wright, and Loving were at his house, Q. D. and D. D. both stated they were going to damage a house. Later, the boys left Brewster's house and went to Wright's house; Q. D., D. D., and Loving left Wright's house together. Later that evening around 7:30, Q. D., D. D., Mario McGill, and Wright went to Brewster's house to watch television. At that time, Q. D. and D. D. stated they had kicked and punched holes in the walls of the Wilder Way house. Q. D. mentioned a broomstick being stuck in the wall. Brewster further testified that Q. D. and D. D. had previously had numerous confrontations with the two sons of the previous tenant.

Loving testified at trial that he was not present at either the Wright or Brewster home when Q. D. and D. D. talked about going into or damaging the Wilder Way house and that he had no knowledge of their involvement. This was in direct contradiction of an earlier written statement that he had given Spalding County Sheriff's Office Investigator Christie Bauch, in which he stated that D. D. told him that he (D. D.) and Q. D. were planning to "mess up" the Wilder Way house. Loving further asserted in his statement that he refused to participate because he "respected [the tenant] and her sons." Loving admitted that he rode the school bus with D. D., Wright, and McGill; that, while on the school bus, he heard Wright mention that the Wilder Way house had been damaged; and that he and McGill went into the house afterward to see the damage.

Q. D. and D. D. testified at trial. They both denied (1) making any statements to Wright, Brewster, or Loving concerning the Wilder Way house; (2) going into the Wilder Way house; and (3) damaging it in any manner. D. D. testified that Wright and Brewster testified against him and his brother because "they just don't want to take the blame for it or get in trouble for it." D. D. testified that Loving's trial testimony varied from his written statement, because "when he gave a statement me and him wasn't friends then." *Held*:

> In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.

(Citations and punctuation omitted.) *In the Interest of J. M.*, 237 Ga.

App. 298 (1) (513 SE2d 742) (1999); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We find that there was sufficient evidence under this standard to support the juvenile court judge's adjudication of delinquency against both juveniles. While some contradictory evidence was presented, "the credibility of the witnesses is for the judge's determination, where the trial judge hears the case without intervention of a jury. This applies to juvenile court proceedings on petitions alleging delinquency." (Citations omitted.) *In the Interest of R. S.*, 253 Ga. App. 409-410 (559 SE2d 143) (2002).

We do not agree with appellants' assertion that the only evidence of their guilt was their confessions which were not corroborated by other evidence as required by OCGA § 24-3-53.

> A conviction may be had on a confession although corroborated only by proof of the corpus delicti. The corroborating evidence or circumstances need not connect the defendant definitely with the perpetration of the offense. Corroboration in any material particular satisfies the requirements of the law. The [finder of fact] must determine the amount of evidence necessary to corroborate a confession.

(Citations and punctuation omitted.) *McCant v. State*, 234 Ga. App. 433, 434 (1) (506 SE2d 917) (1998). The testimony of Investigator Bauch as to the damage to the house was sufficient to establish the corpus delicti, i.e., that the crime actually occurred. Moreover, both juveniles' earlier statements (1) that they wanted to go into the Wilder Way house and (2) that they wanted to damage a house further corroborated their confessions that they had kicked and knocked holes in the walls of the house.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 18, 2003.

*Thomas F. Jones*, for appellants.
*William T. McBroom III, District Attorney, Tammy M. Griner*, for appellee.